## Low v. Clear Creek Coal Co.

(Decided November 25, 1910.)

### Appeal from Bell Circuit Court.

Mines and Mining—Damages to Miner—Responsibility of Owner— Assumption of Risk—Contributory Negligence.—Under Ky. St., section 2739-B, subsection 7, and section 466 Ky. St. as to the liability of mine owners for damages to a miner injured by a

falling roof. Held, the safe rule is that unless the danger from the lack of props is not only imminent but so obvious that an ordinarily careful man would not have worked under the existing conditions, the owner has the responsibility. He having failed in his statutory duty the liability for all consequences is upon him, unless the miner could see or know by ordinary care that the situation was imminently dangerous; that is, there is no assumption of risk by the laborer where the master neglects his statutory duty. But the laborer is still liable for his contributory negligence. To constitute contributory negligence there must be some act or failure on the part of the laborer in addition to the ordinary risks imposed by the character of the work under the conditions created by the master's conduct which would amount to culpable negligence on the laborer's part, such as to look, to observe, or to test in some way the safety of the roof.

O. V. RILEY, for Appellant.

SAMPSON & SAMPSON, for Appellee.

OPINION OF THE COURT BY JUDGE O'REAR—Reversing.

Appellant is a coal miner of some three years' experience. He was employed as a miner in appellee's coal mine to mine coal in a room. He took out the coal and propped the roof of his room. The mine owner was to furnish the timber properly cut and taken into the mine for his use as he requested. On December 24, 1908, he notified the mine foreman that he needed certain props for his room, and selected and marked the lot he required. But the props were not furnished to him. He continued his work until quitting time that day, leaving some six feet of space cleared of coal beyond his last prop. He did not return to work until the 28th of that month, when he again notified the mine foreman of his requirement, and selected and marked the props he needed. They were not sent in to him. He went into his room to begin work. He examined the roof, and discovered nothing indicating immediate danger from it, and began preparations for the day's work, when a large piece of slate forming the roof fell upon him and severely injured him. The fault in the roof was what is known as a "horse-back," which he alleges was not discoverable by ordinary care, and, until it fell, its existence was unknown to him. Such faults were likely to exist in coal mines. And he probably knew that fact.

In the petition in this suit by the miner against the
mine owner for its negligence in failing to furnish him
props as required, by reason of which he alleges he sus-
tained the injury named, he charges the foregoing facts,
coupled with the allegation that it was safe to work the
mine when the roof was propped with suitable  props
placed five feet apart in rows, and the rows four to five
feet apart in the space from which the coal had been re-
moved, and the props so placed as soon as the coal had
been taken out, or in a reasonable time therafter.

A general demurrer was sustained to the petition as
amended, and the plaintiff declining to plead further, his
petition was dismissed.

The circuit court's ruling is said to have been based
upon the notion that as the petition disclosed the un-
safety  of the situation in the room in the absence of
props, a fact alleged to have been in the knowledge  of
the plaintiff, he was guilty of contributory negligence in
going into the room and  commencing to work without
them.  It must be remembered that  the plaintiff alleged
that before going into the room and before  beginning
work, he examined the roof, and found nothing to indicate
that it was not safe, or was about to fall, and that he
believed that it was safe and would not fall before the
props could be brought in and set up;  also that the con-
ditions were such that the immediate danger could not
be discovered by the exercise of ordinary care.   The
situation thus disclosed is that coal mining such as was
here being done, was safe when the roof was propped by
suitable props four or five feet apart, set seasonably, that
is, in a reasonable time after the coal was removed; that
there was an unpropped space of six feet which had been
in that condition about three days; that the miner exam-
ined the roof with care upon going to work  upon the
fourth day, and found nothing indicating a disintegration
or the presence of any defect making its danger immi-
nent. That it was a dangerous situation is admitted. He
went to work under the promise of the foreman to send
in his props presently. The roof immediately fell, owing
to a latent fault, and injured him. Is this on his part
negligence per se, and such as will preclude his recover-
ing damages from his master for his injury? In other
words, was his own conduct the immediate and proximate
cause of the injury? The legislature has from time to
time found it necessary to deal with the mining situation
in Kentucky. It was found that casualties in coal mines

were increasing in number, resulting in destruction of life and maiming laborers, so  as to reduce them to dependence on the public, or on others. It was found that in spite of the common law duty of the mine owner to furnish his laborers a reasonably safe place in which to work, it was not always done.  Besides, there was a question as to the extent of this duty.  By an act approved March 20, 1908, now incorporated as section 2739b Kentucky Statutes (Carroll's), the relative duty of the mine owners and miners were defined respecting a number of things.  Among them was that of furnishing and using props.  Subsection 7 of that section provides:

"Each owner, lessee or operator of every mine  to which the mining laws of this State apply, shall provide and furnish to the miners employed in said mine a sufficient number of caps and props, said props to be sawed square at each end, to be used by said miners in securing the roof in their rooms, and at such other working places where by law or custom of those usually engaged  in such employment it is the duty of said miners to keep the roof propped. after the miner  has  selected  and worked the same."

By subsection 8 of the act, a penalty by fine is imposed on those who neglect the duty imposed by the act, applying both to mine owners or operators, and miners.

This mine was one subject to the act.  It was the custom of this mine for the miners to prop the roof in their rooms.

Section 466 Ky. Stats., provides:

"A person injured by the violation of a statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed."

Facts are alleged in this petition showing that it was the duty of the mine owner to provide the props, that it failed, and that the roof fell because of lack of props. It is therefore sufficiently shown that the violation of defendant's statutory duty was the cause of the injury. But the legislature by the statute regulating the operation of mines did not intend to relieve miners of the duty to be careful of their own safety.  Just the contrary is evinced.  But it did separate the express duties of the owner and miners.  The miner cannot now, nor could he before the statute, shut his eyes to obvious dangers created by his master's negligence, and then charge the

whole consequence upon the master. He is still bound
to use his eyes and other senses, in connection with his
experience and other knowledge, to keep out of such
dangers when they are apparent.

But it is a well known fact, true no more of mining
than other hazardous employments, that laborers when
forced to do so will take chances, and subject themselves
to dangers which in calm reflection is a matter of sur-
prise that they were not avoided by the laborer. He gets
in a hurry; he is so accustomed to the ordinary dangers
of his employment that they do not alarm him—do not
sharply arrest his attention.    Daily   familiarity with
them, and coming through unharmed, begets a mental
attitude respecting them which is natural enough, but
to others not so employed may seem reckless.    These
are well known conditions.  The legislature saw that the
result was an increase in the loss of life and destruction
of earning capacity in that class of persons.  It set about
to remedy the evil.  So, the duty of furnishing means to
make the rooms of the miners safe was imposed on the
master, and the duty of using them when so furnished
was put on the laborer.  It was true then, and is no less
true now, that if the owner or operator neglects to
furnish props or caps that the miners will go ahead with
their work and take chances.  They know that the con-
ditions are inherently unsafe.  Yet, as it is not apparent
to them that they are immediately so,  they take  the
chance, so to speak, of coming out without injury.  Now, if
the statute be so construed as to impose on the miners
the consequences of the situation if they should be in-
jured, then the wholesome benefit of the legislation is
lost.  On the other hand, if it be so construed as to let
the miner shut his eyes to obvious and imminent dan-
gers, it would carry the statute to an unreasonable length
and place a premium on sheer recklessness. · We think
the safe rule is to hold that unless the danger from the
lack of props is not only imminent, but so obvious that
an ordinarily careful man would not have worked under
the conditions, the owner has the responsibility.    He
having failed in his statutory duty, the liability for all
consequences is upon him, unless the miner could see, or
know, by ordinary care, that the situation was danger-
ous and imminently so.  In other words, there is no as-
sumption of risk by the laborer where the master neg-
lects a statutory duty.  But such laborer is still liable for
his contributory negligence.  The two propositions are

not identical.   To constitute contributory   negligence there must be some act or failure on the part of the laborer, in addition to the ordinary risks imposed by the character of his work under the conditions created by the master's conduct, which would amount to culpable negligence on the laborer's part.   Such for example, as a failure to look, to observe, to test in some way, the safety of the roof in this instance; or, if it had been unsafe, and obviously so, and the danger thereby imminent, his continuing to work under those conditions.   (Johnson v. Mammoth Vein Coal Co., 114 S. W. 722, 19 L. R. A., 646.;   Mammoth Vein Coal Co. v. Johnson, 127 S. W. 971.)

The demurrer to the petition as amended   should have been overruled.   Reversed, and remanded for proceedings not inconsistent herewith.