## Thayer v. Kitchen.

(Decided November 28, 1911.)

### Appeal from Carter Circuit Court.

1. Mining—Ventilation—Assumption of Risk by Miner.—A miner whose constitution is poisoned from bad air in consequence of the owner's neglect to ventilate the mine as required by the statute, does not assume the risk by continuing at work.

2. Contributory Negligence of Miner—Question for Jury.—In such a case whether the miner was guilty of contributory negligence by continuing to work in the mine is a question for the jury, there being evidence that he did not know or appreciate the danger which was not imminent but subtle and elusive.

THEOBALD & THEOBALD for appellant.

H. R. DYSARD for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Affirming.

Section 2731, Kentucky Statutes, among other things provides:

"The owner, agent or lessee of every coal mine, whether slope, shaft or drift, to which this act applies, shall provide and maintain for every such mine an amount of ventilation of not less than one hundred cubic feet of air per minute per person employed in such mine, which shall be circulated and distributed throughout the mine in such a manner as to dilute, render harmless and expel the poisonous and noxious gases from each and every working place in the mine; and no working place shall be driven more than sixty feet in advance of a break-through or air-way; and all break-throughs or air-ways, except those last made near the working-face of the mine, shall be closed up and made air-tight by brattice, trap doors or otherwise, so that the currents of air in circulation in the mine may sweep to the interior of the excavations where the persons employed in the mines are at work; and all mines governed by this stat-

ute shall be provided with artificial means of producing ventilation, such as suction or forcing fans, exhaust steam, furnaces, or other contrivances, of such capacity and power as to produce and maintain an abundant supply of air.''

Appellants run a coal mine; appellee, Kitchen, is a miner in their service. He brought this suit against them to recover for the poisoning of his system by their failure to properly ventilate the mine where he worked. The proof for him on the trial showed that the air was not circulated and distributed throughout the mine so as to expel the poisonous and noxious gases; that working places were driven more than 60 feet in advance of a break-through, and that the break-throughs except those last made near the working-face of the mine, were not closed up or made air tight by brattices, trap-doors or otherwise; so that the place in the mine where he was at work was not properly ventilated, and poisonous gases accumulated there. The furnace was not always kept going; on some days it was fired and on some days it was not. Kitchen was assigned by the boss to work in a certain room; he had no education, he knew nothing about air or the effect of breathing bad air. He had worked in the mine off and on for eleven years; he worked in this room during January, February and March of the year 1909. Some time in March his health failed and soon thereafter he brought this suit to recover for the injury to his constitution by the foul air in the mine in that room. The proof makes it clear that the statute was not complied with. But it is insisted that Kitchen can not recover because he continued to work there, and so assumed the risk. When the boss placed him in the room, he asked about the furnace being fired, and the boss answered, ''We don't need the furnace fired; that hole there will furnish the air, plenty of air.'' Kitchen while working in this room noticed that when he would come out he would get sick; he also noticed that it gave him a headache. But these were temporary symptoms that passed off after a little and did not alarm him, and he continued to work until by March he got so he could not work. At that time the bad air in the mine had so poisoned his blood as to destroy his strength. The testimony of a physician in the record shows that breathing this poisonous air affects the lungs, kidneys, liver and stomach. It is very clear from Kitchen's evidence that he knew the air was bad, but that he had no

idea that there was danger in it to his constitution; in other words he knew the physical facts, but he did not know the danger to him from these facts. The court submitted the case to a jury, the defendant offering no evidence. The court, among other things, gave the jury these instructions:

"It was the duty of the defendant to furnish the plaintiff a reasonably safe place in which to work considering the nature and character of the employment and if the jury believe from the evidence that the defendant negligently permitted poisonous, foul and polluted air to fill the room where plaintiff was put to work by the defendant, and that defendant knew or by the exercise of ordinary care could have known of such condition of the air in said room in time to have prevented injury to plaintiff, if any there was, and the plaintiff did not know and by the exercise of ordinary care could not have known of the dangerous condition of said air, if it was dangerous, and further believe from the evidence that the defendants, their agents, and servants in charge of said mine, negligently failed to perform said duty, and that as a direct and natural result thereof, the plaintiff was injured, the jury will find for the plaintiff.

"5. The court instructs the jury that if they shall believe from the evidence that the plaintiff so contributed to the injuries complained of by his own acts that but for such contributory negligence on his party the injury would not have occurred, he can not recover anything for said injuries against the defendants, and the jury will find for them.

"6. Although the jury may believe from the evidence that plaintiff knew of the foul and impure condition of the air where he was placed to work and of the dangers thereof to himself, yet if they should further believe from the evidence that he gave notice to the defendants' manager in charge of said mine of such condition of said air, and said manager expressly directed plaintiff to work at said place and assured plaintiff of the safety and purity of the air, the plaintiff had a right to rely on defendants' assurance, if any, and under such conditions defendants can not be excused on the account of knowledge of the plaintiff of the condition of said air."

The jury found for the plaintiff in the sum of $1,000. The court entered judgment. on the verdict and the defendants appeal.

It is insisted for the defendants that the court should

have instructed the jury peremptorily to find for them on the ground that the plaintiff assumed the risk when he continued to work in the mine as he did. But this argument overlooks the fact that plaintiff's cause of action arises from the violation of a statute, and the right of action is conferred by statute. Section 466, Kentucky Statutes, provides:

"A person injured by the violation of any statute may recover from the offender such damage as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed."

That the doctrine of assumed risk does not obtain under the statute was held by us in Low v. Clear Creek Coal Co., 140 Ky., 754. In that case after showing that such a rule would defeat the purposes of the statute, we said:

"In other words, there is no assumption of risk by the laborer where the master neglects a statutory duty. But such laborer is still liable for his contributory negligence. The two propositions are not identical. To constitute contributory negligence there must be some act or failure on the part of the laborer, in addition to the ordinary risks imposed by the character of his work under the conditions created by the master's conduct, which would amount to culpable negligence on the laborer's part. Such for example, as a failure to look, to observe, to test in some way, the safety of the roof in this instance; or, if it had been unsafe, and obviously so, and the danger thereby imminent, his continuing to work under those conditions."

The ruling in that case is in accord with the weight of authority. (20 Am. & Eng. Ency., 121, 4 Thompson on Negligence, Sec. 4702, 26 Cyc., 1180; Hill v. Saugestad, 22 L. R. A. N. S., 634, and cases cited.)

It is also insisted that in continuing to work in the mine as he did, the servant was guilty of contributory negligence barring his right of recovery. But we think that was a question for the jury. A servant may know a thing is defective and yet by reason of his youth, ignorance or inexperience be incapable of comprehending the danger from it. By continuing at work the servant can not be said to be negligent unless he not only knows the defects but knows the danger, or by ordinary care in the exercise of his employment should know it. (Dow Wire Works v. Morgan, 29 R., 854; Mead v. Ashland Still Co., 30 R., 1164; Cumberland Tel. Co. v.

Graves, 31 R., 972; Keen v. Keystone Lumber Co., 118 S. W., 355; L., &c., R. R. Co. v. McMillen, 119 S. W., 221; L., &c., R. R. Co. v. Armstrong, 137 Ky., 146.) There is a peculiar reason for applying this rule in the case of a subtle poison prevading the air, whose effect is only known to the medical profession, or those who have studied the subject. Kitchen may have been willing to undergo the discomforts of a headache or the temporary sickness that resulted when he left the mine, but it may be that he would not have been willing to take the risk of the noxious gases if he had known their effect on his constitution, and the danger of destroying his entire vitality if he continued to work in the mine. The rule to be applied to an ignorant servant should be more liberal in the case of a subtle agency like bad air than in the case of those physical things like the want of props or the cracking of a roof which he could plainly see and any man of prudence would understand the danger from. We, therefore, conclude that there was no error of the court in refusing to instruct the jury peremptorily to find for the defendant.

We do not find in the record any evidence warranting the sixth instruction. The only talk which Kitchen had with the manager was when he assigned him to the room. He did not report at any time to the manager that the air was bad, and he continued to work there for about two and a half months. It is true the manager told him it was the best air on the job, but this was when he put him to work there; and, as he continued to work there for over two months, he can not in the absence of a statute recover if he knew the danger, simply because the manager said this to him. Still as under the statute he did not assume the risk this instruction was not prejudicial. The question of contributory negligence was submitted to the jury by the fifth instruction, and though this instruction might have been more explicit, it was not prejudicial as the court in another instruction made its meaning clear. On the whole record it is apparent the danger which befell him was unknown to the servant and the jury were warranted in concluding that there was no want of ordinary care on his part in continuing to work as he did with the light he had. The danger was not obvious or imminent, but subtle and elusive. To refuse the statute application would be to defeat its purposes; for it was palpably intended to protect miners from such hazards as here existed.

Instruction No. 1 is more favorable to defendants than is should have been. The court should have set out in an instruction what the statute required of defendants so far as material under the pleadings and the proof, and should have told the jury that if the defendants failed to do these things or any of them there was negligence on their part, and if by reason thereof plaintiff was injured they should find for the plaintiff unless he was himself negligent as set out in No. 5. On the whole case we do not find in the record any error to the prejudice of the substantial rights of appellants.

Judgment affirmed.