## Mt. Morgan Coal Company v. Shumate.

(Decided March 3, 1914.)

### Appeal from Whitley Circuit Court.

1. Master and Servant—Failure to Provide Safe Place to Work—Mines—Ventilation—Kentucky Statutes, Section 2731—Instruction.—In an action by an employee against a mine owner to recover damages for injuries sustained from poisonous gases, where there is evidence showing that the mine was not properly ventilated, an instruction predicated on Section 2731, Kentucky Statutes, relating to certain provisions for ventilation, is not prejudical even though there is no direct evidence of a violation of this particular section.

2. Evidence—Mine Inspector's Report—Admissibility.—The report of the mine inspector in regard to improper ventilation of a mine is admissible in evidence even though based on an inspection made 11 days after the accident complained of, where there is evidence that the condition of the air at the time the inspection was made was practically the same as at the time of the accident.

3.  Master and Servant—Failure to Provide Safe Place to Work—
    Evidence.—In an action for damages by an employee against the
    owner of a mine for injuries resulting from improper ventilation
    of the mine, evidence examined and held to sustain a verdict in
    favor of plaintiff.

J. N. SHARP and GATLIFF & SMITH for appellant.

R. S. ROSE for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY,
COMMISSIONER—Affirming.

In this action for damages for personal injuries against defendant, Mt. Morgan Coal Company, plaintiff, J. B. Shumate, recovered a verdict and judgment for $500. The coal company appeals.

Briefly stated, the facts are these:

Plaintiff was a coal miner, and was in the employ of the defendant during the months of January, February, and up to March 3, 1911. On that day he went into the mine to load coal. For this purpose he was endeavoring to take a car into the room where he had been assigned to work by the bank boss. As he moved along he was overcome by the noxious gas in the mine, and felt like he wanted to go to sleep. His head began to hurt, and he called for matches. The matches would not burn. He then made his way towards the entrance, and in a short time became unconscious. After he came to he dragged himself to the mine entrance. When the driver came back he got on his car and went out of the mine. After that he felt like he would die with his head. He was weak all summer. Could not do anything and could hardly walk. The fan that forced the air into the mine was in bad condition. The mine was an old one. It contained considerable water. One of the reasons that the part of the mine where plaintiff was at work did not get a proper amount of fresh air was that the airway was full of stone and slate. On cross-examination plaintiff stated that he did not call for a doctor. He was in the room seven or eight minutes before he was overcome. Had had about 20 years' experience in mining. After being overcome he had the headache and backache and was sick at the stomach. The reason that he did not call for a doctor was that he had nothing coming to him for the month of March, and had no means on hand, and

therefore had nothing to give him. Plaintiff proved by two or three other miners that the ·air in the mine was bad, and that the effect of the bad air was to .stop up a man's lungs ·so he could not breathe, and to give him a headache and make him feel like he was drunk.

Defendant introduced several witnesses who testified in substance that the air in the mine was in a reasonably good condition, and that they had never detected any black damp in the entry where plaintiff was at work. Black damp is non-poisonous. It suffocates by excluding oxygen from the lungs. If breathed for any length of time, small quantities of the gas cause headache and nausea, followed by pains and weakness in the back and limbs. Larger quantities produce death. Jim Stealy, who, it is claimed, gave the matches to plaintiff, testified that plaintiff told him the air was getting too heavy for him, and he had to get out. He found the air all right. Dr. Ellison, the mine physician, testified that he treated plaintiff for la grippe in the month of February, 1911. In his experience he had never seen a case where the effect of being overcome by black damp was permanent.

At the conclusion of defendant's evidence, counsel for plaintiff re-called John Pauff, who at the time he testified was superintendent of the mine. He was not at the mine when plaintiff was injured. He had gone to Lexington a few days before to be examined as to his fitness for his position of mine foreman. He returned after plaintiff was injured, and visited the mine for a week or two thereafter. In his opinion, the air was in about the same condition as it was when he left. Thereupon plaintiff introduced the report of the mine inspector showing that the ventilation of the mine was not as it should be, and that in the entry where plaintiff was at work the air was not strong enough to turn the anemometer.

Plaintiff predicated his case on the theory that the defendant, by reason of the presence of noxious gases in the mine, failed to furnish him a reasonably safe place to work. Section 2731, Kentucky Statutes, is as follows:

"The owner, agent or lessee of every coal mine, whether slope, shaft or drift, to which this act applies, shall provide and maintain for every such mine an amount of ventilation of not less than one hundred cubic feet of air per minute per person employed in such mine, which shall be circulated and distributed throughout the

mine in such a manner as to dilute, render harmless, and expel the poisonous and noxious gases from each and every working place in the mine; and no working place shall be driven more than sixty feet in advance of a break-through or air-way; and all break-throughs or airways, except those last made near the working-face of the mine, shall be closed up and made air-tight by brattice, trap-doors or otherwise, so that the currents of air in circulation in the mine may sweep to the interior of the excavations where the persons employed in the mines are at work; and all mines governed by the statute shall be provided with artificial means of producing ventilation, such as suction or forcing fans, exhaust steam, furnaces, or other contrivances, of such capacity and power as to produce and maintain an abundant supply of air. All mines generating fire-damp shall be kept free from standing gas, and every working place shall be carefully examined every morning with a safety lamp, by a competent person or persons, before any of the workmen are allowed to enter the mine. And at every mine operated by a shaft there shall be provided an approved safety-catch, and a sufficient cover overhead, on all cages used for lowering and hoisting persons, and at the top of every shaft a safety gate shall be provided, and an adequate brake shall be attached to every drum or machine used in lowering or raising persons in all shafts and slopes.''

The court told the jury in substance that it was the duty of the defendant to use ordinary care to provide plaintiff a reasonably safe place in which to work, and that it was its further duty to provide and maintain an amount of ventilation of not less than one hundred cubic feet of air per minute per person employed in such mine, which should be circulated and distributed throughout the mine in such a manner as to dilute, render harmless and expel the poisonous and noxious gases from each and every working place in the mine. That it was the further duty of the defendant to close up and make air-tight the break-throughs or air-ways, except the last one near the working-face of the mine. He further told the jury that if defendant violated its duty in any one of these respects, and by reason thereof plaintiff, while exercising ordinary care for his own safety, was, as a direct and proximate result of the negligence and carelessness of

the defendant, overcome by poisonous and noxious gases or bad air, and was thereby injured, they should find for the plaintiff. It is insisted that this instruction is erroneous because there was no proof in regard to any failure on the part of the defendant to comply with the statute with reference to break-throughs. While as a general rule instructions should not be predicated on issues upon which there is no evidence, the real issue in this case was whether or not noxious gases were permitted to accumulate in the mine, and whether or not plaintiff, while exercising ordinary care for his own safety, was overcome by any such gases and thereby injured. To this issue the evidence was directed. The duties imposed by the statute are for the purpose of proper ventilation. In view of the fact that the real issue, that is, the presence of noxious gases and their effect on plaintiff, was submitted to the jury, we conclude that the reference to the statutory duties of the defendant was not prejudicial, even though there was no direct evidence tending to show a violation of the statute.

Complaint is made of the fact that the mine inspector's report was admitted in evidence. The ground of this complaint is that the report was made 17 days after the accident. It appears, however, that though the report was made on March 20th, it was based on an inspection made March 14th. Before offering the report in evidence, plaintiff proved by defendant's superintendent that the condition of the air at that time was practically the same as it was just before and after the plaintiff's injury. Under these circumstances, the report was clearly admissible.

While it is true that plaintiff did not have medical treatment, and that his version of the accident is not supported by any other witness, and that defendant's evidence tended to show that no permanent effects would result from black damp, yet, in view of the fact that the mine inspector's report showed that the air was not in good condition, we cannot say that the verdict is flagrantly against the evidence.

Judgment affirmed.