## Jellico Coal Mining Company v. Walls.

(Decided November 6, 1914.)

## Appeal from Whitley Circuit Court.

1. Mines—Failure of Owner to Ventilate as Required by Section 2731, Kentucky Statutes—Injury to Health of Miner from Lack of Ventilation.—A coal miner may recover against the mine owner damages for injury to his health resulting from the failure of the mine owner to provide the mine, at his place of work, with the necessary quantity of fresh air, as required by section 2731, Kentucky Statutes.

2. Master and Servant—When There is no Assumption of Risk by the Laborer.—Where the master neglects a statutory duty and his negligence in so doing results in injury to a miner in his employ, the former will not be excused upon the ground that the injury to the latter resulted from one of the ordinary risks assumed by him in accepting the employment. There is no assumption of risk by the laborer where the master neglects a statutory duty.

TYE, SILER & GATLIFF for appellant.

R. S. ROSE and R. L. POPE for appellee.

Opinion of the Court by Judge Settle—Affirming.

This is an appeal from a judgment of the Whitley Circuit Court, entered upon a verdict awarding appellee $300.00 damages against the appellant for injuries to his health sustained while at work as a miner in the latter's employ, from noxious and poisonous gases in its coal mine, which it had, as alleged, negligently allowed to accumulate and exist therein, in violation of the requirements of section 2731, Kentucky Statutes, which provides:

"The owner, agent or lessee of every coal mine, whether slope, shaft or drift, to which this act applies, shall provide and maintain for every such mine an amount of ventilation of not less than one hundred cubic feet of air per minute per person employed in such mine, which shall be circulated and distributed throughout the mine in such manner as to dilute, render harmless, and expel the poisonous and noxious gasses from each and every working place in the mine; and no working place shall be driven more than sixty feet in advance of a break-through or air-way; and all break-throughs or air-ways, except those last made near the working face

of the mine, shall be closed up and made air-tight by brattice, trap-doors or otherwise, so that the currents of air in circulation in the mine may sweep to the interior of the excavations where the persons employed in the mines are at work; and all mines governed by this statute shall be provided with artificial means of producing ventilation, such as suction or forcing fans, exhaust steam, furnaces, or other contrivances, of such capacity and power as to produce and maintain an abundant supply of air. All mines generating fire-damp shall be kept free from standing gas, and every working place shall be carefully examined every morning with a safety lamp, by a competent person or persons, before any of the workmen are allowed to enter the mine. And at every mine operated by a shaft there shall be provided an approved safety-catch, and a sufficient cover overhead, on all cages used for lowering and hoisting persons, and at the top of every shaft a safety gate shall be provided, and an adequate brake shall be attached to every drum or machine used in lowering or raising persons in all shafts and slopes.''

It appears from the evidence that pure or fresh air is supplied to appellant's mine by a mechanical contrivance known as a forcing fan, which, by a process of suction, withdraws the impure air from the air courses in the mine and causes the vacuum thus created to immediately fill by the pure air entering the mine at the main entry, from which it goes into the various entries where the employes are at work; brattices or trap-doors and curtains being maintained at certain openings to prevent the escape of the fresh air from the passage through which it is conveyed to the places of work.

It is a requirement of the statute that every person working in a mine shall have at least one hundred cubic feet of fresh air per minute, and experience has demonstrated that this quantity of fresh air in a mine entry will not travel more than sixty feet in a horizontal direction without artificial assistance. According to the appellee's evidence he was for several days at work in room No. 10, on what is known as the Maple entry, and at a distance of something like 300 feet ahead of the fresh air, or 240 feet beyond the standard of sixty feet fixed by the statute. It further appears from the evidence that brattices which should have been maintained for forcing the air to where appellee was at work were down and not maintained, and that curtains in places

along the air-way were partly down, because of which the fresh air which should have gone to and circulated where appellee was at work, was diverted, and by this means the air about him was pervaded with noxious gases or foul air, which made his place of work one of danger; but the danger of continuing in his place of work was unknown to appellee, if as he and some of his witnesses stated, the presence of the foul air was unknown to appellee and his fellow workmen.

The conditions described produce either "black damp" or "white damp." Black damp is commonly known as carbonic acid gas, or dead air, with the properties of oxygen exhausted, which causes suffocation by excluding oxygen from the lungs. White damp, or carbon monoxide, has the effect to destroy the hemaglobin of the red corpuscles, or the oxygen-carrying property of the blood, which produces a weakening of the physical and mental powers and often results in death.

Appellant does not complain of the instructions that were given by the court, but asks a reversal upon the grounds that the trial court erred in refusing a peremptory instruction directing a verdict in its behalf; and that the verdict is flagrantly against the evidence. The first complaint can not prevail, because three witnesses besides the appellant testified as did he with reference to the presence of the noxious gases in his place of work, and the absence of the brattices and curtains which, if in use, would have prevented them. It is true a greater number of witnesses introduced by appellant testified to the contrary, but this contrariety of evidence did not authorize the peremptory instruction asked, and the giving of such instruction would have constituted reversible error. A verdict will not be set aside for failure of the trial court to give a peremptory instruction, if there was any evidence authorizing the submission of the case to the jury.

Nor do we find it proper to sustain appellant's second ground for a reversal. "The fact that the evidence is conflicting or that this court would have made a different finding on the facts, or that, in its opinion, the verdict is against the weight of the evidence, furnishes no cause for setting it aside; nothing short of its being clearly and palpably against the evidence will give the appellate court authority to disturb it on this ground." L. & I. R. Co. v. Roemmele, 157 Ky., 84; Emp. C. & M. v. McIntosh, 82 Ky., 334. It is not true, as contended by

appellant, that there was no evidence conducing to prove that the appellee was injured, as claimed. He and others testified that he was physically weak and debilitated from working in the mine, that his heart action was abnormally increased and that he suffered from dizziness and headache, and these are admittedly the symptoms and effects attending the breathing of impure mine air. According to appellee's further testimony, his injuries were more than temporary and his health had not been restored at the time of the trial; and even if the injuries sustained were but temporary, the amount allowed him by the verdict will not more than compensate him for what he suffered. It is true a physician testified that he treated him when he quit appellant's service, and that he thought him afflicted with an old rheumatic trouble. He admitted, however, that appellee then complained of having been injured by the foul air of the mine and that his symptoms were such as might have resulted from the inhaling of such foul air. Other workmen in the mine say they were not aware of the existence of the foul air complained of by appellee and that they were not affected thereby, but their testimony was not sufficient in the estimation of the jury to overcome that showing the injuries sustained by appellee, and we must be content to accept the facts as the verdict determined them.

The questions here involved, resting upon a similar state of facts, have recently been considered by us in Log. Mt. Coal Co. v. Crunkleton, 160 Ky., 202, and we there affirmed a similar recovery, holding that there is no assumption of risk by the laborer where the master neglects, as was done in that case and this, a statutory duty; the reason for the rule being that the risks assumed by the miner are only such as arise after the mine operator has discharged his statutory duty.

It follows from what has been said that the judgment of the circuit court should be and it is affirmed.