[Crim. No. 49. Second Appellate District.—August 31, 1907.]

# THE PEOPLE, Respondent, v. M. H. WILLIAMSON, Appellant.

CRIMINAL LAW—MURDER—REQUESTED INSTRUCTION—BASIS—DEFENDANT'S TESTIMONY.—Upon a prosecution for murder, in which defendant testified that deceased occupied a room in a lodging-house kept by her, and had attempted to commit rape upon her, and shortly prior to the shooting he had made an indecent proposal, which led her to believe that he intended to force her to have sexual intercourse with him against her will, and armed herself with a revolver to protect herself, which she exhibited to him, and ordered him to leave the house, when the revolver was accidentally discharged, resulting in his death, she had a right to an instruction based upon her testimony, declaring that she had a legal right, under the circumstances, to arm herself for her own protection, and to demand that he leave the house, and that if the pistol was accidentally and unintentionally discharged, resulting in his death, the jury should acquit the defendant.

ID.—PREJUDICIAL ERROR—REFUSAL OF REQUESTED INSTRUCTION—IMPROPER SUBSTITUTE—SUBMITTING QUESTION OF LAW TO JURY.—It was prejudicial error to refuse the requested instruction, and to give an improper substitute submitting the question of law to the jury to determine whether she had the right to order the defendant to leave his room, at the time of the shooting, though giving the remainder of the instruction substantially as requested, with reference to the right to carry the revolver for the purpose of self-defense; and to an acquittal if the killing was accidental and unintentional.

ID.—RIGHT TO ORDER DECEASED FROM HOUSE—QUESTION OF LAW.—Whether or not defendant had a right to order deceased from her house, and reasonably enforce such exclusion, was a question of law, dependent on the facts found by the jury.

ID.—ASSUMPTION OF TRUTH OF DEFENDANT'S TESTIMONY.—Assuming, as the trial court must, in giving an instruction based on defendant's testimony, that it was entirely true, it was the plain duty of the court to give the instruction requested, and to have informed the jury of defendant's legal rights, should they find the facts claimed by defendant to be true.

ID.—IMPROPER EXCLUSION OF EVIDENCE—CORROBORATION OF DEFENDANT'S TESTIMONY.—Where the defendant, after the first assault made by deceased, exhibited her bruises to a witness, it was im-

proper to exclude the evidence of such witness in corroboration of defendant's testimony that he saw said bruises, and that afterward he saw deceased, shortly before the shooting, following the defendant through the hallways and rooms when she was about her work, and making indecent proposals to her.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. B. N. Smith, Judge.

The facts are stated in the opinion of the court.

Jud R. Rush, and Davis, Rush & Willis, for Appellant.

U. S. Webb, Attorney General, and George Beebe, Deputy Attorney General, for Respondent.

ALLEN, P. J.—Appeal by defendant from a judgment of conviction and from an order denying a new trial.

The bill of exceptions discloses that one Parry was shot and killed on July 17, 1905, in room 27 of a lodging-house in the city of Los Angeles operated by defendant; that the shot which occasioned the death came from a pistol then held in the hands of defendant. About these matters there is no controversy.

The theory of the defendant, which was supported by evidence tending to establish the truth thereof, was that deceased had, on the 4th of July preceding his death, made an assault upon defendant with intent to commit a rape; that in the struggle which ensued her neck and wrists were bruised and injured; that on the next morning he left defendant's rooming-house, but on the following Tuesday returned, and, in the absence of defendant, again secured a room in the lodging-house; that several days afterward defendant learned that he was again an occupant of the room, and on Monday morning, the 17th, defendant encountered him in a hall of the house; that the deceased again made improper and threatening advances, when defendant ordered him to leave the house at once; that deceased refused to go and called defendant a vile name; that she gave him ten minutes to leave the house and went downstairs and secured a revolver; that armed with this revolver defendant went to a window leading into the room of deceased, and, leaning over the window into the

6 Cal. App.—22

room, showed him the pistol and again ordered him to leave; that he promised to do so, when defendant, who was standing on her toes in order that she might lean through the window, sought to regain her equilibrium, and in the effort the pistol was accidentally discharged, producing the death.

Upon the trial in due time, defendant requested the court to give to the jury the following instruction, numbered VII:

"I instruct you that if you find from the evidence that the defendant at the time of the difficulty was the lessee of the house wherein the difficulty occurred, and was conducting it as a rooming and lodging-house, and that the deceased had shortly theretofore, at the said house, assaulted the defendant and attempted to rape her, and at the time of the difficulty he made an indecent proposal to her to have sexual intercourse with him, or attempted to have sexual intercourse with her against her will, or by his conduct led her, as a reasonable woman, to believe that he then and there intended to force her to have sexual intercourse with him against her will and consent, that she had a perfect legal right to command him to leave her home and to demand of him that he leave at once. The defendant would not be compelled to shelter within her home the deceased if he had attempted to commit a felony upon her and by his conduct led her, as a reasonable person, to believe that he intended to do so at the first opportunity that presented itself. I further instruct you that under such circumstances the defendant would not only have the right to go to the room of the deceased and demand of him that he leave her house, but that if the conduct of the deceased led her to apprehend, and she did as a reasonable woman apprehend, that he would at such time commit a felonious assault upon her, she had a perfect right to arm herself with a pistol or other deadly weapon to protect her life and person against such assault, and to take it with her when she went to his room. And defendant would have the right, under such circumstance, to exhibit said weapon for the purpose of preventing such apprehended assault. And if you find that the defendant did, under such circumstances, go to the room of the deceased for the purpose of demanding that he leave her house and that she took the pistol with her to protect herself and her person from such apprehended assault, and while so doing the weapon was accidentally and unintentionally discharged, whereby the deceased was killed, you

must acquit the defendant. And in determining whether or not the weapon was intentionally discharged by the defendant you must take into consideration all the circumstances surrounding the difficulty and the circumstances that led up to the difficulty, if such have been proven, and the condition of the defendant's mind at the time, if the same was brought about by the wrongful acts or conduct of deceased as aforesaid.''

This charge the trial court refused to give, and the judge indorsed upon such written instruction presented and requested this notation: ''In place of this instruction is No. XII, drawn by court and given.'' Instruction XII referred to is as follows:

''If you believe from the evidence that the defendant had the right to order the deceased out of room 27 at the time of the shooting, then if she had reason to apprehend an assault from deceased, she would have the right to take the revolver with her for the purpose of defending herself, and if, while so doing, the weapon was accidentally and unintentionally discharged, whereby the deceased was killed, you should acquit the defendant.''

Under sections 1127 and 1093 of the Penal Code, it is the duty of the court to state to the jury all matters of law necessary for their information, and the court must charge on any point pertinent to the issue if requested by either party. ''Every instruction which correctly declares the law applicable to the case which it supposes, if the case can be rationally inferred from the testimony, should be given.'' (*People* v. *Taylor,* 36 Cal. 267.) The refusal to give this instruction constituted reversible error. (*People* v. *Fice,* 97 Cal. 459, [32 Pac. 531] ; *People* v. *Hecker,* 109 Cal. 460, [42 Pac. 311].) ''However incredible the testimony of the defendant, he was undoubtedly entitled to an instruction based upon the hypothesis that his testimony was entirely true.'' (*People* v. *Keefer,* 65 Cal. 232, [3 Pac. 819].) Whether or not defendant had a right to order deceased from her house, and reasonably enforce such exclusion, was a question of law dependent upon the facts found by the jury. Assuming, as the trial court must when requested to give an instruction, that the testimony of defendant was entirely true, the plain duty of the court was to have given the instruction requested, and to have informed the jury of the defendant's legal rights should

the jury find the facts claimed by defendant to be true. It was error for the court to instruct the jury, as it inferentially did by instruction XII, that the jury were judges of the law in that they were to determine from the evidence whether or not the defendant had the right to order the deceased out of the room at the time of the shooting. Nor does charge No. VI given by the court, which was, in effect, that where the evidence fails to show any motive on the part of defendant to commit the crime, this is a circumstance tending to show the innocence of the defendant which the jury ought to consider, cover the ground stated by the instruction refused. Instruction VI as given presupposes that the shot was fired voluntarily and a crime had been committed, while instruction No. VII is asked upon the ground that the shot was an accidental one and no crime was in fact committed, and no intent formed to commit the crime and no act done within the plain legal rights of defendant. It is insisted by the attorney general that instruction IX, which was in effect that if the jury found that the shot was accidental it must acquit, was sufficient to cover all that was material in instruction VII refused. With this we do not agree. The object and purpose of the defendant in procuring a weapon before the final call upon deceased in an effort to compel his vacation of the room was a material matter in the determination of the question of the accidental or designed character of the shot fired; her right so to arm herself was involved. It may be that the jury being called upon to determine the question of law came to the conclusion that she had no right, in any event, to procure and exhibit a weapon, and that having the weapon in her possession unlawfully, the conclusion must follow that she thus armed herself with an intent to commit a crime, and it was thus influenced in determining as it did that the shot fired was not by accident.

In our opinion, the court erred in other particulars. The defendant was permitted to testify, without objection, that after the first assault upon her, she showed her wrists and arms to Mr. Leppertt, that he might see the bruises. Mr. Leppertt was offered as a witness by defendant, and upon direct examination was asked: "Q. I will ask you, Mr. Leppertt, if within one week before the shooting you saw this defendant, Miss Williamson, with her wrists very much swollen and discolored, and her face and neck bruised and

swollen, going about the house there?" This question was objected to, and the objection sustained. Again, the witness Leppertt was asked: "Q. I will ask you if shortly before the shooting you saw this man, not the very same day, but within a very few days before, Saunders, following this defendant through the hallways and through the rooms when she was about her work, addressing to her indecent and insulting proposals?" This question was also objected to, and the objection sustained. We think both questions were material and competent. The defendant testified, and it was one of the principal matters in support of her theory of defense, that a criminal assault had been made upon her, and her neck, arms and wrists had been bruised. It was proper for the jury to know whether she had cause to fear bodily injury when again ordering deceased from her house, and this first question asked Leppertt was in corroboration of defendant's statement about the assault theretofore testified to by her, and which she claimed to be the grounds for apprehending injury. The defendant had testified to facts showing not only the first attempt to commit a crime, but subsequent improper overtures and actions indicating an intent to commit another assault. This question to Leppert in relation to the man's conduct shortly before the shooting was corroborative in its nature, and defendant had the right to corroborate her statements by the testimony of others with knowledge of the same facts. The exclusion of this testimony could not be otherwise than prejudicial.

For all the reasons above assigned, the judgment and order denying a new trial are reversed, and cause remanded for further proceedings.

Shaw, J., and Taggart, J., concurred.