[Crim. No. 191.   Third Appellate District.—October 2, 1912.]

THE   PEOPLE, Respondent, v. JOHN C. CARROLL, Appellant.

CRIMINAL LAW—GRAND LARCENY—MONEY TAKEN FROM PERSON—CON-
SPIRACY TO ROB—PROPER REFUSAL TO INSTRUCT AS TO PETIT LAR-
CENY.—Under a charge of grand larceny in taking a purse con-
taining $23.53 from the person of the prosecuting witness, where the
evidence showed that he had the purse in his pocket when he left
the ground to get on a car, and that there was a conspiracy of
several persons to obstruct his entrance, and that he heard defendant
say "I have got it" whereupon they left the car together, and he
missed his purse; it is held that the evidence shows no rational proba-
bility nor reasonable possibility that defendant picked the purse
from the ground, but got it out from the pocket of the prosecuting
witness; and that the court properly refused to instruct the jury that
they might find the defendant guilty of petit larceny.

ID.—INSTRUCTIONS MUST APPLY TO FACTS.—Instructions must be appli-
cable to the facts, and it is not error to refuse instructions which are
inapplicable to the facts.

ID.—SUPPOSED DROPPING OF PURSE—LAW APPLICABLE.—If the purse was
caused to drop by the conspirators in their effort to commit the
larceny, which is matter of surmise, it was in point of law and com-
mon sense a taking from the person. If they had caused the robbed
man to fall and his purse had slipped from his pocket in falling
and defendant had picked it up, and the conspirators had then
departed with the money, the law would have regarded it as taking
from the person's possession.

ID.—ERRONEOUS INSTRUCTION—POWER OF DEFENDANT TO PRODUCE
STRONGER EVIDENCE—DISTRUST—ERROR NOT CURED BY INSTRUCTION
AS TO DEFENDANT'S RIGHT—JUSTICE NOT MISCARRIED.—An instruction

applicable to the defendant, that "Evidence is to be estimated not only by its own intrinsic weight, but also according to the evidence which it is in the power of one side to produce, and the other to contradict, and therefore, if weaker and less satisfactory evidence is offered, when it appears that stronger and more satisfactory was within the power of the party, the evidence offered must be viewed with distrust," is erroneous; and such error is not cured by a proper instruction as to the constitutional right of the defendant to be silent; yet in view of the rule established in section 4½ of article VI of the constitution, it cannot be said, in view of the whole case, that by such erroneous instruction, there has been a miscarriage of justice.

APPEAL from a judgment of the Superior Court of San Joaquin County and from an order denying a new trial. C. W. Norton, Judge.

The facts are stated in the opinion of the court.

Geo. F. McNoble, for Appellant.

U. S. Webb, Attorney-general, and J. Charles Jones, Dep-Attorney-general, for Respondent.

CHIPMAN, P. J.—The defendant was convicted of the crime of grand larceny on an information jointly charging defendant and Walter Flavin and George Armstrong with its commission. He appeals from the judgment of conviction and from the order denying his motion for a new trial. The prosecuting witness was one F. M. Katsura, a Japanese who resided at the city of Fresno.

The attorney-general makes the point that "the appellate record has not been properly perfected and the appeal should be dismissed." The objections having been removed, it is not necessary to notice them.

Katsura testified that he came to Lathrop on February 23, 1912, on his way to Sacramento, his train arriving at Lathrop at about one o'clock P. M.; that he left his car to take the Sacramento train which was to leave in a few minutes; he hastened to the front of the first car, but there was a crowd of people getting on and, to avoid them, he went back to get in the rear car; that he had a grip or handbag in the right hand and his left hand in his pocket where his purse

was; that, as he neared the platform of the car and was about
to step on the platform, he took his left hand out of his pocket
and used it to hold on his hat as a gust of wind threatened
to blow it off.   He testified that his purse was in his pocket
at that time.   As he approached the platform Flavin, one of
the three men charged with the crime, stepped up ahead of
him and halted, obstructing Katsura's passage; another of
the three, Armstrong, stepped to the right side of Katsura
and commenced pushing him, crying, "Hurry up, hurry up,"
while the third, Carroll, the defendant, stood at the left side
of Katsura; at this time and while Katsura was holding on
his hat and was about to step on the platform he heard the
man standing at the left say, "I have got it, I have got it,"
and at once he realized he had been robbed; he put his left
hand to his pocket and found it pulled out and his purse
gone, in which there was $23.50 and three pennies; these
three men immediately withdrew and went forward toward
the front end of the train and disappeared.   Their subse-
quent movements in the town of Lathrop, up to the time of
their arrest on the same day, are partly accounted for and
tended to confirm the testimony of Katsura that they were
engaged in a conspiracy to rob him.   It appeared that they
had no tickets for that train, that two of them purchased
tickets for Merced not long after the theft.   The evidence was
quite sufficient to show that the "job" was "pulled off" in
a way common among this class of pickpockets and it is not
now urged that the evidence was insufficient to establish lar-
ceny.

A reversal of the judgment of conviction is urged on two
grounds: 1. Because the court refused to give the following
instruction requested by defendant: "If the jury are satisfied
from the evidence beyond a reasonable doubt and to a moral
certainty that the defendant, John C. Carroll, did on or about
the 23rd day of February, 1912, at and in the county of San
Joaquin, state of California, steal, take and carry away the
sum of $23.53, the personal property of F. M. Katsura; but
if at said time and place said sum of $23.53 was not in the
possession of and not upon the person of one F. M. Katsura,
then they cannot convict said defendant of grand larceny,
but may bring in a verdict of guilty of petit larceny"; and
2. Because the court gave the following instruction: "Evi-

dence is to be estimated not only by its own intrinsic weight, but also according to the evidence which it is in the power of one side to produce and the other to contradict; and, therefore, if weaker and less satisfactory evidence is offered when it appears that stronger and more satisfactory was within the power of the party, the evidence offered should be viewed with distrust.''

Counsel, in his cross-examination, endeavored to show by the witness that his pocket-book might have fallen out of his pocket while he was in the act of removing his hand from it and that the defendant might have picked it up from the ground. The following questions and answers will illustrate the point: ''Q. You had never seen Mr. Carroll before that day; that is the first time you ever saw him, was it? A. Yes, first time. Q. Do you know who took the purse out of your pocket? Do you know who took the purse out of your pocket? A. Well, I have not seen take off at same time he say 'I have got it.' Q. You don't know who took the purse out of your pocket? A. No. Q. You don't know whether when you pulled your hand out you may have dropped the purse, do you? A. No. Q. You don't know? A. I don't know. Q. You don't know but what you may have dropped the purse out of your pocket—might have fallen out of your pocket when you pulled your hand out, do you? A. I don't understand. (Question read.) A. Pretty hard to understand. The Court: You understand the question? A. Pretty hard to understand that question. Mr. McNoble: Q. Did you see Mr. Carroll, the defendant, take your pocket-book out of your pocket? A. I don't see him take it. Q. You didn't see him take it out? A. No. Q. What? A. No. Q. Do you know whether somebody took him out, or whether it fall out, for sure? A. I can't tell. Q. You can't tell? It may have fallen out then, out of your pocket? A. I can't tell. Q. You can't tell whether it fell out or somebody take it? A. No. Q. Is that right? A. Yes, that is right. Q. Then it may have fallen out of your pocket on the ground when you went to get up in the car, is that right? A. But I know sure I had the pocket-book on the ground before I get on the car. Q. You say you are pretty sure you had it when you were on the ground? A. Yes, sure; I sure I got on the ground because I have hold of it. Q. But you don't know how it got out

of your pocket, that right? A. Pretty hard to understand your question. Q. I say you don't know how your pocket-book got out of your pocket? It might have fallen out or may have been taken out, is that it? A. I don't know that. Q. You don't know that. You wouldn't say for sure then— you wouldn't say that for sure then? A. What do you mean? Q. Do you know for sure? Do you know for sure how your pocket-book got out of your pocket? A. I don't know, sure. Q. You don't know for sure? A. No. Q. Somebody might have taken it out or it might have fallen out or you might have dropped it, that right? A. Yes." Following this cross-examination the witness testified: "Q. State whether or not you dropped your purse on the ground outside of the car. A. I don't understand now. Q. You know before you step up on the car? A. Yes. Q. You take your hand out of your pocket you say? A. Yes. Q. Grab your hat? A. Yes. Q. Now when you take your hand out you pull your purse out and drop him that way? (Shows.) A. No. Of course my hand was on pocket-book. Q. You look out for— A. Yes. I look out for pocket-book. Re-cross. Mr. McNoble: Q. I understand you to say, however, you don't know how that pocket-book get out of your pocket? The Court: I think it has been answered. He said before that he didn't know. Mr. McNoble: Very well."

Appellant cites the following cases in support of his contention: *People* v. *Stofer*, 3 Cal. App. 417, 421, [86 Pac. 734]; *People* v. *Comyns*, 114 Cal. 107, 112, [45 Pac. 1034]. It is undoubtedly the rule that, where there is any evidence from which a reasonable inference may be drawn that the crime of which the defendant was convicted was of a lesser degree— in this case, petit larceny, as is claimed—it is prejudicial error to withdraw from the jury the consideration of such evidence and confine the instructions to the crime of grand larceny. In the Stofer case, there was considerable evidence tending to show that the money taken by the defendant could have been abstracted from his victim's purse while it was in defendant's possession with the consent of the owner and also that it might have been taken when the purse was on the table and out of the owner's possession. In the Comyns case, the question related to the value of the articles found in defendant's possession which was taken from the jury.

In the case here the evidence leaves no rational inference that defendant picked up the purse from the ground and, even if he did so, the evidence shows that it could not have dropped to the ground but for the maneuvers of these men who were on the spot with the design to rob him. If the purse dropped, which is a mere surmise or possibility unsupported by any evidence, and it was caused to drop by these men in their effort to commit the larceny, it was in point of law and common sense a taking from the person. If these men had caused Katsura to fall down and his purse had slipped from his pocket in falling and defendant had picked it up and the three men had then departed with the money the law would have regarded it as taking from the person's possession. These three men had Katsura surrounded—one obstructing his entry to the car, another jostling him and attracting his attention by crying "Hurry up," when he could not enter the car for the obstruction they offered, and the third stood at his left side and, while these proceedings were going on and at the same time Katsura was told to hurry up, the defendant said, "I have got it, I have got it," and the three immediately left the car. The condition of Katsura's pocket when he put his hand down to it showed that it had been pulled out, which must have been done by the defendant. Katsura's testimony was that the defendant stood at his side and back of him when he said to his confederates, "I have got it." Instructions must be applicable to the facts and it is not error to refuse instructions inapplicable to the facts. (*People* v. *Turley*, 50 Cal. 469; *People* v. *Chaves*, 103 Cal. 408, [37 Pac. 389]; *People* v. *Chaves*, 122 Cal. 140, [54 Pac. 596].) We do not think the evidence showed that there was a reasonable probability or a reasonable possibility that the defendant picked up the purse from the ground or that it came out of Katsura's pocket otherwise than through defendant's agency.

2. The second of the above instructions was given in connection with several other general instructions usually given in criminal cases. The court also instructed the jury as follows: "The jury are instructed that it is the constitutional right of the defendant to stand mute in a criminal action, and his neglect or refusal to be a witness cannot in any manner prejudice him nor be used against him in the trial or pro-

ceeding. The jury are instructed that if the defendant has neglected or refused to become a witness in his own behalf, such fact or circumstance cannot in any manner prejudice him in this trial and you are not to consider such fact or circumstance as any evidence against him in this trial."

Appellant cites *People* v. *Cuff*, 122 Cal. 589, [55 Pac. 407], and *People* v. *Charles*, 9 Cal. App. 338, [90 Pac. 383], in which latter case the Cuff case was commented upon and in which case also a petition for hearing in the supreme court was denied January 12, 1909. In the Cuff case the instruction complained of was given and also a similar instruction to the one last above quoted, wherein the court said to the jury that "no inference of guilt can be drawn against him (defendant) for a failure to testify in his own behalf." After the admonition given by the supreme court in the Cuff case that, "in criminal cases the proper occasions are so few, and the improper occasions are so many, that it were best they should be given rarely, if at all," we must infer that the instruction found its way to the jury through inadvertence. But this fact cannot lessen the prejudicial effect it may have had upon the jury.

We think, however, that the rule established by the amendment to our constitution (art. VI, sec. 4½) was designed to meet just such a case as this and should be applied at this time. It reads: "No judgment shall be set aside, or new trial granted in any criminal case on the ground of misdirection of the jury or the improper admission of or rejection of evidence, or for error as to any matter of pleading or precedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." Adopted October 10, 1911.

The instruction under consideration did not go to the degree of the crime as did the other one, which latter admitted the crime of larceny but gave the jury the right to pass upon the degree—whether grand or petit larceny, and this was a fact in the case as to which the defendant had the right to the verdict of the jury, had there been evidence applicable. It may be that the constitutional amendment was not designed to take away such right, where there is evidence reasonably tending to establish a different crime or a crime of less degree

than that of which the defendant was convicted. There is a difference between misdirecting the jury and in refusing to direct them correctly in matters as to which defendant is entitled by right to have the jury instructed. In the instance before us the jury were misdirected, from which it is urged that the jury were prejudiced by the fact that the defendant offered no evidence, whereas he might have himself testified or have called his confederates. There were in fact no other witnesses of the transaction whom he could have called. The evidence was convincing that the crime was committed. Defendant does not challenge the evidence except to claim that he should have had an instruction as to what constitutes petit larceny. After an examination of the entire cause, including the evidence, we cannot say that the error complained of resulted in a miscarriage of justice.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.