[Crim. No. 454.  Second Appellate District.—February 4, 1916.]

## THE PEOPLE, Respondent, v. JOHN A. WILSON, Appellant.

CRIMINAL LAW—MURDER—INSTRUCTIONS—WHEN REFUSAL TO INSTRUCT ON MANSLAUGHTER ERRONEOUS.—In a prosecution for murder the court may properly refuse to instruct the jury that they may return a verdict of manslaughter, if the evidence clearly shows that the crime committed was not manslaughter; but where the evidence is such that the jury would be warranted in returning a verdict of manslaughter, it is prejudicial error for the court to refuse, at the request of the defendant, to instruct the jury that it might, if the evidence warranted it, find the defendant guilty of manslaughter.

ID.—MANSLAUGHTER—DEFINITION.—Manslaughter is the unlawful killing of a human being, without malice; and one of the conditions described in the code definition is that of an involuntary killing "in the commission of an unlawful act, not amounting to felony."

APPEAL from a judgment of the Superior Court of Tulare County, and from an order denying a new trial. W. B. Wallace, Judge.

The facts are stated in the opinion of the court.

· Farnsworth & McClure, for Appellant.

U. S. Webb, Attorney-General, and Robert M. Clarke, Deputy Attorney-General, for Respondent.

CONREY, P. J.—Defendant was convicted of the crime of murder in the second degree and sentenced to imprisonment for the term of twenty years. His appeal is from the judgment and from an order denying his motion for a new trial.

The principal assignment of error refers to the court's instruction to the jury that it might find the defendant guilty of murder in the first degree, or murder in the second degree, or not guilty, and the court's refusal to add to these alternatives an instruction that they might, if the evidence warranted it, find him guilty of manslaughter. The general rule is, as stated in the Penal Code, section 1159, that "the jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense." The attorney-general has called our attention to decisions of the supreme court which hold that in a prosecution for murder the refusal of the court to instruct the jury that they may return a verdict of manslaughter is not error, if the evidence clearly shows that the crime committed was not manslaughter. (*People* v. *Lee Gam,* 69 Cal. 552, [11 Pac. 183]; *People* v. *Fellows,* 122 Cal. 233, [54 Pac. 830], and other cases cited in those decisions.) We do not question the rules as stated, but they are not applicable to the record in this case. Brinkley, the deceased, was about 23 years old, and an attachment had grown up between him and a fifteen year old daughter of the defendant. The defendant had informed his daughter that he was opposed to her association with Brinkley, and had sent to the young man information to the same effect. On the morning of June 6, 1915, Brinkley went out riding on a motorcycle with defendant's daughter. The defendant purchased a revolver and started down the road in the direction they had taken. The defendant testified that he saw them coming toward him on the motorcycle and waved his hands, but they seemed to be coming faster. He testified further as follows: "Then I thought if I would pull the gun out of my pocket and wave

it at him, that he would surely stop then. . . . And when he passed me, just before he got to me, he said something to Dora, he says, 'I will, if I hit him,' . . . and he brushed me along the side here [showing] and on this rib, forearm, and kind of numbed that arm a little, . . . And at that time I struck at him with the gun in my hand, and the gun discharged. And whether I hit him or not, I didn't know, I wasn't thinking about shooting at all, I never thought of shooting. But when I struck at him the gun discharged. . . . And directly I seen the motorcycle turn to one side and they tumbled off, and then I thought he had been shot when the gun discharged. Then I came on up and Dora, she asked me if she should call a doctor, and I says, 'Yes, call one,' then I says, 'Wait a minute.' Some other parties had come in an automobile and I says, 'Wait, and maybe they can go quicker and call a doctor'. "

Manslaughter is the unlawful killing of a human being, without malice. One of the conditions described in the code definition is that of an involuntary killing "in the commission of an unlawful act, not amounting to felony." (Pen. Code, sec. 192.) If the jury believed the testimony of the defendant, they might have reached the conclusion that in striking at the deceased the defendant was committing an unlawful act amounting to an assault, but without intending to shoot. The firing of the pistol under the circumstances shown endangered the life of his daughter as well as the life of Brinkley. Her arm was around the young man and the bullet did in fact pass through the middle finger of her right hand. There is no evidence that the defendant had ever threatened the life of Brinkley or that he entertained animosity toward him beyond the mere fact that he was unwilling to have the young man paying attentions to his daughter, who was still a young school girl. The testimony to which we have referred, with much other evidence to which we might refer, was abundantly sufficient to entitle the defendant to have the case go to the jury under instructions which would permit a verdict of manslaughter.

Counsel for defendant in their brief assert that the court erred in giving certain other instructions, and also in refusing to give sundry instructions requested by the defendant. These assertions are not accompanied by any argument or any reference to authorities bearing upon the questions in-

volved; and we will not discuss these instructions more than to say that, on the face of the record, we perceive no error in the court's rulings concerning them. So far as the refused instructions were correct and pertinent to the case, the substance of them appears to have been given in the court's instructions to the jury. Nevertheless, the error which was committed and to which we have referred was sufficient to seriously prejudice the defendant with respect to an important right of defense, and he is entitled to a new trial.

The judgment and order are reversed.

James, J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 3, 1916.