### Jellico Coal Company v. Adkins.

(Decided February 13, 1923.)

## Appeal from Whitley Circuit Court.

1.  Master and Servant—Traumatic Injury—Workmen's Compensation Act.—Some external physical force actually directed against the body must occur in order to constitute traumatic injury by accident as used in the workmen's compensation act.

2.  Master and Servant—Disease Compensable Under Workmen's Compensation Act.—A disease, not the natural and direct result of a traumatic injury by accident, is not compensable under the statute.

3.  Master and Servant—Injuries Compensable.—As to injuries compensable under this act, the compensation therein provided is exclusive of all other remedies.

4.  Master and Servant—Disease—Traumatic Injury.—Diseases of an employe contracted in the course of his employment and arising out of it, occasioned by the negligence of the employer, and not caused by traumatic injury, are actionable at law.

5.  Master and Servant—Workmen's Compensation Act—Jurisdiction—Claims.—The workmen's compensation board has no jurisdiction of a claim not compensable under the statute.

6.  Master and Servant—Workmen's Compensation Act.—When claim is filed before the workmen's compensation board for an injury not compensable under the statute and such claim dismissed for lack of jurisdiction upon the part of the board, such action will not bar a suit at law for negligence based on the same claim.

7. Master and Servant—Assumption of Risks.—An employe may rely on an employer obeying the provisions of a statute, and in working under such conditions, he does not assume risks occasioned by failure of the employer to obey the law.

8. Master and Servant—Contributory Negligence.—It is not contributory negligence as a matter of law, for an employe to continue to work in an improperly ventilated mine, even though he may have headache and other temporary illness therefrom, where he does not know of the danger or appreciate serious results therefrom.

9. Master and Servant—Negligence—Proximate Cause.—Where an employe is made sick by bad air in an improperly ventilated mine, and develops inflammation of the lining of the heart, and it is shown that the conditions of the mine and several other causes will produce this result, but it is shown the other conditions mentioned did not exist, the evidence is sufficient to submit to the jury the issue as to whether the injuries were the proximate result of the negligence alleged.

TYE & SILER and FRANTZ, McCONNELL & SEYMOUR for appllant.

E. L. STEPHENS, I. N. STEELEY and STEPHENS & STEELEY for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

Appellant, Jellico Coal Company, owns and operates a coal mine, and the appellee, Morgan Adkins, claims to have been injured by impure air while working as a laborer therein on and before January 26, 1920.

Both parties had theretofore agreed to accept the workmen's compensation act, chapter 33, Acts of 1916, and Adkins filed an application for compensation before that board, and it found (1) "Morgan Adkins, while employed by defendant became ill from the effects of bad air in the mine, and on January 26, 1920, discontinued his employment. At the present time he is suffering from inflammation of the lining of the heart. (2) No other employe in the mine at the date the claimant became ill had any bad effects from the condition existing in the mine.

"RULINGS OF LAW.

"(1) Personal injury under the common law and personal injury by accident under the compensation act are not synonymous.

"(2) The burden of proof is on the plaintiff to show that his disability was the result of traumatic injury by

accident, arising out of and in the course of his employment.

"AWARD.

"The board is without jurisdiction in this case, and for that reason the application for adjustment of claim is dismissed."

From this award Adkins appealed to the Whitley circuit court. In the meantime he had filed an ordinary action in that court alleging negligence, and in which action he sought to recover damages on defendant's common law liability, and the coal company pleaded that suit in bar of his appeal.

The circuit court adjudged the plea good, but further affirmed the action of the workmen's compensation board in finding it had no jurisdiction of the matters involved. Thereupon the coal company pleaded the proceedings before the board of compensation in bar of this action. This was overruled and it traversed the petition and pleaded contributory negligence.

A trial resulted in a verdict and judgment in favor of appellee for $2,250.00. The coal company appeals and assigns for reversal a number of alleged errors.

It is claimed that the appellee himself was guilty of contributory negligence, and that his injuries are not the proximate result of the negligence alleged, and that the court erred in its instructions. Further appellant insists that when both parties accept the workmen's compensation act, such compensation board is given jurisdiction to hear and determine all claims for injuries to the employe, except as provided in the act. It argues that the compensation provided in the act is substitutional and not cumulative, and therefore it is exclusive of all common law remedies; that at any rate the appellee having elected to claim compensation before the board, and it having dismissed the claim he cannot seek any further relief.

Our compensation act was approved March 23, 1916. Prior to that time compensation acts had been enacted in England and in many of the states of the Union. While differing in some respects, in a general way these acts are all of a similar nature and at that time had been the subject of judicial construction. Such acts have at all times been the subject of favorable comment by the courts, but even then confusion had arisen as to the meaning and application of the various terms therein, especially as to the phrase, "personal injury by accident," and also as to the application of the act to diseases, more particularly as

to the so-called "occupational" and "industrial" diseases, so much so, that we find Lord Churchill Halden quoted as saying: "Having regard to the conflict which exists between judicial opinions expressed in some of the decided cases, the only safe guide appears to me to be in the language of the parliament itself." 27 R. C. L. 799.

The legislature presumably knew of this confusion and undertook to make its meaning clear on this question by defining the disputed terms.

Section one of the act, section 4880, Kentucky Statutes, provides:

"It shall effect the liability of the employer subject thereto to their employes for personal injuries sustained by the employe by accident arising out of and in the course of his employment, or for death resulting from such accidental injury; provided, however, that personal injury by accident as herein defined, shall not include diseases except where the disease is the natural and direct result of a traumatic injury by accident, nor shall they include the results of a pre-existing disease."

Section 3 of the act, section 4882, Kentucky Statutes, provides:

"Whereas at the time of the injury, both employer and employe have elected to furnish or accept compensation under the provisions of this act for a personal injury received by an employe by accident and arising out of and in the course of his employment, or for death resulting from such injury within two years thereafter, the employer shall be liable to provide and pay compensation under the provisions of this act and shall be released from all other liability whatsoever; provided, however, that if injury or death result to an employe through the deliberate intention of his employer to produce such injury or death, the employe or his dependent, as herein defined, shall receive the amount provided in this act in a lump sum, to be used as they so desire, to prosecute the employer, and said dependents shall be permitted to bring suit against said employer for any amount they may desire; that if injury or death results to an employe through the deliberate intention of his employer to produce such injury or death, the employe or his dependents as herein defined shall have the privilege to take under this act, or in lieu thereof to have a cause of action at law against such employer as if this act had not been passed, for such damages so sustained by the employe, his dependents or personal representa-

tives as may be recoverable at law. If a suit is brought under this section, all rights to compensation under the provisions of this act shall thereby be waived and void as to all persons, and if a claim is made for the payment of compensation or any other benefit provided by this act, all rights to sue the employer for damages on account of such injury or death shall thereby be waived and void as to all persons.''

If the legislature had desired to make ''occupational'' diseases compensable, it had a precedent in the English law. If it had desired to adopt a liberal course in making such injuries compensable by the board without going to the extent of the English statute, it could have found a precedent in the Massachusetts statute in which the word ''accident'' is omitted; or if it had intended to allow compensation for such diseases as were occasioned by accidental injury to the employe, it had a precedent in the statutes of a dozen or more of the states.

It is clear that it did not intend to fully adopt any of the former acts and that it meant to restrict compensation through this act to such diseases as were the ''natural and direct result of a traumatic injury by accident,'' and not to include the results of a pre-existing disease.

Obviously the construction of this phrase turns on the definition of the word ''traumatic.'' The word ''trauma'' is defined in Black's Legal Dictionary as a ''wound; any injury to the body caused by external violence,'' and ''traumatic'' is defined as ''caused by or resulting from a wound or any external injury.'' In Webster's New International Dictionary the word ''trauma'' is defined as ''a wound or injury,'' ''traumatic'' as ''pertaining to or due to a wound or injury.'' The Century Dictionary defines ''traumatic'' to be ''an abnormal condition of the human body produced by external violence as distinguished from that produced by poisons, symotic infections, bad habits and other less evident causes.'' Webster's Unabridged Dictionary defines ''traumatic'' as ''a wound or injury directly produced by causes external to the body; also violence producing a wound or injury as rupture of the stomach by traumatism.''

It will be observed that all of these definitions of ''trauma'' and ''traumatic'' imply the presence of physical force, and this is the generally accepted meaning of the word. Evidently the act implies that some external physical force actually directed against the body must occur in order to constitute traumatic injury by accident,

and under the findings of fact by the board and the evidence in the case as hereinafter set out, the board did not have jurisdiction to allow compensation.

The next question is, is the act exclusive as to diseases not covered by it, or as to these has the injured party a remedy at common law?

Much has been written in eulogy of these acts. We have been reminded of the difficulties that the employe encountered at common law in a suit to recover damages for negligence. It has been said that he first had to show negligence on the part of the employer. If he succeeded in that he was handicapped by the doctrine of assumed risk, fellow servant and contributory negligence and in the majority of cases was barred of recovery; that under the benevolent influence of these acts he surrendered his claim for pain and suffering and disfigurement, and in return the old common law doctrines of assumed risk, fellow servant negligence and contributory negligence were all abolished, and the employe is now insured a safe, certain and speedy compensation.

It is further claimed that they relieve the employer from the expense and uncertainty of long and vexatious litigation, and fix the compensation of the injured one as an item in the expense of the business to be borne in the same way as is the replacement of damaged machinery.

In other words, by this act the subtle refinements and distinctions of the common law are swept aside, and a remedy is found for all the ills incidental to industrial casualties.

We are not dissenting from this, nor are we assenting to it, but we venture to suggest that if such was the humane purpose of the legislature, that it could hardly have intended as a part of the same act to deny all remedy and all recovery to the employes of this Commonwealth who contract diseases through the negligence of their employers, except as to such as have received traumatic injuries.

We are strengthened in this view by the fact that we have a number of acts for the protection of employes; notably that which requires fire protection in all buildings, also as to drainage and ventilation in the mines. The latter is especially instructive on this point, it being a well known fact that the insidious dangers arising from impure and poisonous air are as hazardous as are those occasioned by traumatic injuries, if not more so.

It is inconceivable that the legislature after providing such laws .should have intended to. leave them without any provision for their enforcement, and we cannot believe that it intended to nullify these acts without directly repealing them.

It is true that the compensation act provides that as to those coming within its provisions the employer shall be liable to provide and pay compensation under the provisions of the act and that he shall be released from all other liability whatsoever. It is further true that provision is made for a suit at law to be brought against the employer for any intentional injury, giving to the injured party or to his representatives in case of death the option of choosing the form of action, and it is provided that the election of one remedy shall be a bar to the prosecution of the other; but it will be observed that these provisions affect only those who are within the purview of the statute, and while as to them the remedy suggested would be exclusive, it would not apply to others who did not come within the provisions of the act.

We, therefore, conclude that diseases of an employe, contracted in the course of his employment and arising out of it, occasioned by negligence of the employer and not caused by traumatic injury are not compensable under the act, but that for such diseases he may have an action at common law. Further that as the board of compensation had no jurisdiction of the claim, a proceeding in that tribunal did not bar an action at law, and the court did not err in so holding.

Turning to the errors alleged in the common law action. Appellee was twenty years of age at the time of the injury but had worked in the mines for six or seven years.

He claims that on the morning in question he and his "buddy," Jim Bills, were working in a room which was over 100 feet from the nearest breakthrough, and that the brattices were in bad condition.

They fired two shots and went outside for about thirty minutes for the smoke to clear up. He said that in a properly ventilated mine the smoke will clear in from ten to fifteen minutes, but for several days this room would not clear in less than half a day, and that it caused him to have headaches, but that he did not know that it was dangerous.

. He loaded a car and pushed it to the entry and returned to load another when he was attacked by a severe

headache and had to go outside the entry and lie down; that he remained there for about twenty minutes and not getting any better he left the mine on one of the motor cars, and when he struck the fresh air on the outside he became dizzy and had a smothering sensation. He started home, a mile and a half distant, and on the way stopped at a spring and drank, which made him worse, and from that time, which he believes was about nine A. M., he does not remember anything that occurred until he arrived home in company with his brother at 3:30 in the afternoon. He was suffering from pains in his chest and head, and that he went to bed, where he had to remain for a period of three months, and that at present he is in a weakened condition and unable to work, and is permanently afflicted with endocarditis.

He was treated by a physician who was employed by the company, but paid by the employes, and who called a second physician in consultation during his illness. He did not complain of smoke or impure air in the mines when his physician asked for a history of the case, and the physicians do not agree as to the cause of endocarditis. The evidence of one rather negatives the idea that it could be produced by carbon dioxide or carbon monoxide, and says that according to the authorities he has read it is the result of typhoid fever, scarlet fever, rheumatism, septisemia, blood poisoning or any disease in the blood might cause the trouble.

However it appears that appellant has never had any of these diseases, and the other physician gives it as his opinion that breathing poisonous air or gases would produce such condition.

The evidence of appellant admits that the work was being done seventy feet beyond the breakthrough, but contradicts appellee's evidence as to the condition of the mine, and as to other material matters. It was further shown that no one else became sick, and that appellee's sickness was not known to any one present at the time except his "buddy" who worked with him.

The statute provides that no working place shall be driven more than sixty feet beyond a breakthrough except with the consent of the assistant inspector for the district. It is not claimed that such consent was given, and this court has held in a number of cases that when the defendant has failed to conform to a statutory duty it cannot rely on the defense of assumed risk. Log Mountain Coal Co. v. Crunkleton, 160 Ky. 202; Jellico Coal

Mining Co. v. Walls, 160 Ky. 730; Thayer v. Kitchen, 145 Ky. 554.

The facts above stated raise an issue as to appellee's knowledge or apprehension of the danger of continuing to work after discovering the danger of which he complains, or as to whether in the exercise of ordinary care he should have known of same, hence if such existed, it can not be said as a matter of law that he was guilty of contributory negligence in continuing to labor. Thayer v. Kitchen, 145 Ky. 554; Log Mountain Coal Co. v. Crunkleton; Jellico Coal Mining Co. v. Walls, *supra*.

It is in evidence that breathing impure air and poisonous gases in a mine will produce endocarditis; further, that appellee's present condition followed his sickness at the mine, and no further cause is assigned for that condition. It seems that this is sufficient evidence of his injuries being proximately produced by such air and gas, to submit that question to the jury.

No demurrer was filed to the petition and the issue as to whether appellee could have known of the dangerous condition of the mine was presented by proper instruction to the jury. Hence the failure to so allege in the petition (if a defect) is cured by the verdict.

It is further suggested that the court should have given an instruction based upon the special facts showing contributory negligence. We are of the opinion that instruction No. 3 given by the court conforms to that view of the law.

Perceiving no error the judgment is affirmed.

Whole court sitting.