[Crim. No. 4232.   Second Dist., Div. Three.   Nov. 29, 1948.]

THE PEOPLE, Respondent, v. PAUL BURNS, Appellant.

William B. Neeley, Public Defender, and Al Matthews, Deputy Public Defender, for Appellant.

Fred N. Howser, Attorney General, Frank Richards, Deputy Attorney General, W. E. Simpson, District Attorney, Jere J. Sullivan and Robert Wheeler, Deputy District Attorneys, for Respondent.

VALLÉE, J.—Defendant, Paul Burns, was charged by information and convicted by a jury of the offense denounced by Penal Code, section 273d, in that "on or about the 7th day of October, 1947," he did "wilfully, unlawfully and feloniously make an assault and inflict a corporal injury upon Joy Burns, who was then and there the wife of the said Paul Burns, and that the said assault did result in a traumatic injury to said Joy Burns, a human being." The defendant made a motion for a new trial which was denied. He made application for probation which was granted, conditioned upon his serving the first 30 days of the probationary period in the county jail. He appealed from the order denying his motion for a new trial.

Penal Code, section 273d, so far as pertinent, provides: "Any husband who wilfully inflicts upon his wife corporal injury resulting in a traumatic condition, but not constituting a felonious assault or attempted murder, . . . is nev-

ertheless guilty of a felony." The section was added to the Penal Code in 1945 (Stats. 1945, ch. 1312, § 1).

Joy Burns testified that on October 7, 1947, the date alleged in the information as that upon which the offense was committed, she was living with the defendant, her husband, in an apartment in Los Angeles; that he hit her with his bedroom slipper. The defendant testified: On the morning of October 7, 1947, an argument with his wife occurred about the radio being on; at that time she tried to kick him; he then grabbed her foot to protect himself; there was a mark on his leg where she kicked him; he picked up his slipper and slapped her with it on the *derrière,* but did not hit her anywhere else; he did not recall how many blows were struck in that quarrel; they had breakfast and he left to find work. Defendant was taken into custody on the afternoon of October 7, 1947. The arresting officer testified that defendant was very intoxicated at the time of the arrest. Defendant admitted to Officer Weaver that on October 7, 1947, he had spanked his wife with a hairbrush after getting into an argument over the radio being turned on and that he had then gone out.

Joy Burns, without objection, also testified: During the evening of October 6, 1947, appellant came home very intoxicated; he did not recognize who she was; she was sitting on her bed, propped up with pillows, and he asked her if she would go out with him; she said no, that he should go to bed since he was in no condition to go out; there was a sort of brawl; she tried to get him ready for bed, he resented it and struck her more than twice with his closed hand on the back of the head; she also testified that in the brawl she received injuries on the right side of her face just below the mouth, on the left side of her body opposite the navel, on her left upper arm, some bruises on her left knee and a mark on the back of the neck and about the top of the hip bone.

A chiropractor testified: He visited Mrs. Burns in the late afternoon of October 7, 1947, and found her in bed; he examined her and found bruises on the right cheek, right shoulder, a black and blue spot over the right hip and right knee; her temperature was 99.6 and her pulse 90; she showed symptoms of slight shock; her reflexes were a little exaggerated; the pupillary reflexes were normal; there were no fractures or dislocations; she had a partial sublaxation of the right hip; he treated her three times for pains in the

head and in the neck. He stated that he had treated her for five years prior to that time and that during that period she had complained of fainting spells. Photographs taken of Mrs. Burns on October 8, 1947, show only superficial, minor contusions.

Defendant testified: He came home about 10:30 in the evening on October 6, 1947; he was not intoxicated, he only had had a couple of beers at 6 o'clock; he and his wife had an argument, but it did not get to the point where blows were inflicted; he did not strike his wife at all that night; he asked her, "Let's make up, I will take you out"; she said, "No," and talked him into staying home; they both went to bed but there was no striking or hitting and he did not touch her that night; he did not know how she received the marks shown in the photographs; she could have fallen down or fainted; he did not hit her. After his arrest defendant told Officer Weaver that he had not struck Mrs. Burns before the morning of October 7th, that he had just given her a mild spanking on that morning and gone out. The officer questioned him as to how his wife had received the bruises. He stated that he did not know, that he had never noticed them, and that he had never hit her hard enough to make them.

Appellant contends that the trial court committed prejudicial error in refusing to give the following instructions to the jury:

(1) "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury upon the person of another.

"The term 'violent injury', as used in this definition, does not require that the injury be a severe one, but includes any wrongful act committed by means of physical force against the person of another even though it entails no pain and leaves no mark.

"To constitute an assault, it is not necessary that any actual injury be inflicted, but if an injury is inflicted, that fact may be considered by the jury, in connection with all other evidence, in determining the nature of the assault."

(2) "You may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, (or of an attempt to commit the offense,) if, in your judgment, the evidence supports such a verdict under my instructions.

"To enable you to apply the foregoing instruction, if your findings of fact require you to do so, I instruct you that the offense of *violation of section 273d of the Penal Code,* of which the defendant is charged in the information, necessarily includes the crime(s) of assault, a misdemeanor."

(3) "If you find that the defendant was guilty of an offense included within the charge of the information (indictment), but entertain a reasonable doubt as to the degree of the crime of which he is guilty, it is your duty to convict him only of the lesser offense."

No instruction on any point covered in the foregoing instructions was given to the jury. Appellant argues that the crime of assault is necessarily included in the offense defined by Penal Code, section 273d, and that under the evidence the jury could have found the defendant guilty of "simple" assault. The attorney general concedes that the offense of "simple" assault defined by Penal Code, section 240, is necessarily included in the offense defined in section 273d. He argues that an instruction defining assault was not necessary.

Penal Code, section 1159 provides: "The jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense." ██ It is elementary that the court should instruct the jury upon every material question upon which there is any evidence deserving of any consideration whatever. (*People* v. *Quimby,* 6 Cal.App. 482, 486 [92 P. 493]; *People* v. *Foster,* 79 Cal.App. 328, 337 [249 P. 231]; *People* v. *Hill,* 76 Cal.App.2d 330, 343 [173 P.2d 26].) ██ The fact that the evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereon. (*People* v. *Perkins,* 75 Cal. App.2d 875, 881 [171 P.2d 919]; *People* v. *Peete,* 54 Cal.App. 333, 356, 359 [202 P. 51]; *People* v. *Wong Hing,* 176 Cal. 699, 705-706 [169 P. 357].) That is a question within the exclusive province of the jury. However incredible the testimony of a defendant may be he is entitled to an instruction based upon the hypothesis that it is entirely true. (*People* v. *Perkins, supra,* p. 881; *People* v. *Williamson,* 6 Cal.App. 336, 339 [92 P. 313]; *People* v. *Keefer,* 65 Cal. 232, 234 [3 P. 818].) ██ It is the duty of the court to instruct the jury in regard to any included offense which the evidence tends to prove. (*People* v. *Stofer,* 3 Cal.App. 416, 418 [86 P. 734];

*People* v. *Carroll,* 20 Cal.App. 41, 45 [128 P. 4]; *People* v. *Wilson,* 29 Cal.App. 563, 564 [156 P. 377]; *People* v. *Mock Ming Fat,* 82 Cal.App. 618 [256 P. 270]; *People* v. *Driscoll,* 53 Cal.App.2d 590, 593 [128 P.2d 382].) In *People* v. *Carroll, supra,* the court said (p. 45): "It is undoubtedly the rule that, where there is any evidence from which a reasonable inference may be drawn that the crime of which the defendant was convicted was of a lesser degree . . . it is prejudicial error to withdraw from the jury the consideration of such evidence and confine the instructions to the crime [charged]." A similar situation to that in the case at bar was before the court in *People* v. *Hickey,* 109 Cal. 275 [41 P. 1027]. The defendant was charged with sodomy. The court first stated that "simple" assault may or may not be included in the offense of sodomy. It then held (p. 276): "It is further argued that the evidence discloses either a commission of the felony, or establishes that the defendant is wholly innocent. Possibly the evidence might support such conclusion if the prosecution had confined itself to facts occurring at a single time; but, for reasons not here perceptible, evidence was introduced as to circumstances of guilt arising upon two different occasions, and upon different days. The evidence failed to disclose the commission of a felony upon one of these occasions at least, but possibly disclosed a simple assault. By reason of these facts the principle of law presented is enveloped in some confusion. But section 220 of the Penal Code in terms recognizes the offense of assault with intent to commit the crime here charged, and a simple assault is a necessary element in the offense named in said section 220. From all the facts here disclosed we conclude the question of consent was an open one, which should have been presented to the jury; and, also, that the case was such that the question of assault likewise should have been submitted to the jury." Cases relied upon by the attorney general were cases where the evidence did not, upon any view of it, justify conviction of a lesser offense. They were cases where there was no room for a compromise verdict. They are not applicable to the record in this case.

█ It is clear that the evidence which we have recited required the giving of the quoted instructions requested by defendant. Under the instructions as given the jury had only two alternatives, to return a verdict of guilty as charged or one of not guilty. There was evidence which would have warranted the jury in finding the defendant guilty of "simple"

assault. The evidence was not such as to make it clear that if the defendant was guilty at all, he was guilty of the higher offense charged. Under the well settled rule of law cited in the foregoing authorities it was prejudicial error to refuse the instructions.

Appellant also contends that the court committed prejudicial error in not giving on its own motion an instruction defining the words "a traumatic condition" used in Penal Code, section 273d. The point is well taken. In order to convict the defendant of the offense charged it was incumbent on the prosecution to establish the existence of the following elements constituting the offense: (1) that the defendant and the victim are husband and wife; (2) that the defendant wilfully inflicted upon his wife corporal injury; and (3) that the corporal injury thus inflicted resulted in "a traumatic condition." The court instructed the jury that: "Any husband who wilfully inflicts upon his wife corporal injury resulting in a traumatic condition but not constituting a felonious assault or attempted murder, is guilty of the offense with which the defendant is here charged." It then defined the term "corporal injury" for them as follows: "Corporal injury is touching of the person of another against his will with physical force in an intentional, hostile and aggravated manner, or projecting of such force against his person." It did not define for them the third element of the offense "a traumatic condition." We are of the opinion that the court should have given, on its own motion, an instruction to the jury defining and advising them as to what, in contemplation of law, constitutes "a traumatic condition." "Trauma" has been defined as: "An abnormal condition of the living body produced by violence as distinguished from that produced by poisons, zymotic infection, bad habits, and other less evident causes; an injury or wound; any injury to the body caused by external violence; a wound; a wound or injury directly produced by causes external to the body; also the violence producing a wound or injury, the word generally implying physical force." (63 C.J. 804.) "Traumatic" has been defined as: "A term applied to wounds, caused by or resulting from a wound or any external injury, having to do with a wound or injury, of or pertaining to wounds, pertaining to or due to a wound or injury." (63 C.J. 804.) (See, also, 42 Words and Phrases perm. ed., pp. 387-391.) In *Jellico Coal Co.* v. *Adkins,* 197 Ky. 684 [247 S.W. 972], the court went extensively into the meaning of the word

"traumatic" [p. 974, 247 S.W.]: "The word 'trauma' is defined in Black's Legal Dictionary as a 'wound; any injury to the body caused by external violence.' And 'traumatic' is defined as 'caused by or resulting from a wound or any external injury.' In Webster's New International Dictionary, the word 'trauma' is defined as 'a wound or injury;' 'traumatic' as 'pertaining to or due to a wound or injury.' The Century Dictionary defines 'traumatic' to be 'an abnormal condition of the human body produced by external violence as distinguished from that produced by poisons, symotic infections, bad habits and other less evident causes.' Webster's Unabridged Dictionary defines 'traumatism' as 'a wound or injury directly produced by causes external to the body; also violence producing a wound or injury, as rupture of the stomach by traumatism.'" (See, also, *Straight Creek Fuel Co.* v. *Hunt,* 221 Ky. 265 [298 S.W. 686, 687]; *Great Atlantic & Pacific Tea Co.* v. *Sexton,* 242 Ky. 266 [46 S.W.2d 87, 89]; *Cavalier* v. *Chevrolet Motor Co.,* 189 App.Div. 412 [178 N.Y.S. 489, 491]; *Periss* v. *Nevada Industrial Commission,* 55 Nev. 40 [24 P.2d 318].) In the Kentucky cases of Adkins and Hunt it was held that a traumatic injury was one resulting from external physical force. In the later Sexton case it was held that a traumatic injury may be produced by any external force whether physical or not. An examination of the cases cited in Corpus Juris and Words and Phrases reveals that there has been much controversy and litigation with respect to the meaning of "traumatic." The words, "a traumatic condition" are not commonplace words. We cannot say, as a matter of law, that their meaning is within the knowledge of jurors. The difficulty the legal profession and the courts have had with the meaning of the word "traumatic" clearly indicates that the term is a technical one. "The court should define legal and technical terms used in its instructions, but need not define commonplace words, especially in the absence of a request therefor." (8 Cal.Jur. § 374, p. 327.) In *People* v. *Malone,* 82 Cal.App.2d 54, 69 [185 P.2d 870], we said: "The rule is that it is the duty of the court in criminal cases to give, *sua sponte,* instructions on the general principles of law pertinent to such cases where they are not proposed or presented in writing by the parties themselves. It is not the duty of the court to give such instructions upon specific points developed through the evidence introduced at the trial, unless such instructions are requested by the party desiring them. (*People* v. *Warren,*

16 Cal.2d 103, 116 [104 P.2d 1024]; *People* v. *Bender,* 27 Cal.2d 164, 175 [163 P.2d 8].) '' (See, also, *People* v. *Klor,* 32 Cal.2d 658, 662 [197 P.2d 705].) An instruction defining ''a traumatic condition'' was on a principle of law pertaining to the offense charged. It was not on a point developed through the evidence introduced at the trial. It should have been given by the court on its own motion.

In view of the conclusions stated it is unnecessary to consider other points made by appellant for reversal.

Order reversed.

Wood, J., concurred.

SHINN, J.—I concur in the judgment because of error in failing to instruct on the included offense of assault. I agree that it would have been advisable to define the term ''traumatic condition'' but do not believe the omission was reversible error. The condition to which the evidence of injury related was a traumatic condition, whether it resulted from blows struck by defendant or was caused in some other manner. Only one condition of injury was described by the witnesses and this was of traumatic origin. The crucial question was not the nature of the injury, but the cause of it.