### ROSS et al. v. JONES.

### No. 13232.

Court of Civil Appeals of Texas. Dallas.

Oct. 9, 1942.

Rehearing Denied Nov. 13, 1942.

W. H. Hall, of Dallas, and O. A. Featherston, of Murfreesboro, Ark., for appellants.

Thompson, Knight, Harris, Wright & Weisberg and Pinkney Grissom, all of Dallas, for appellee.

LOONEY, Justice.

Violet True Ross, widow, and Howard Cody Ross, minor son and only child of Chester Howard Ross, deceased, sued A. Raymond Jones, a contractor and builder, to recover exemplary damages, as authorized by Sec. 26, Art. 16 of the Constitution, Vernon's Ann.St., for the death of the husband and father, respectively, of plaintiffs. (Compensation under the Workman's Compensation Law having theretofore been paid).

Plaintiffs' cause of action is based upon the alleged violation of an act of the Legislature, adopted in 1919 for the protection of workmen on buildings. The act is set out in full as Art. 1582 of the Penal Code, also, minus the penal provision, as Art. 5182, Vernon's Ann.Civ.Sts. Plaintiffs' allegations bring the cause clearly under the provisions of the act, to the effect that the defendant, a general contractor, had charge of the erection and construction of a steel frame building, more than three stories in height, in the City of Dallas; that Chester Howard Ross, deceased, husband and father, respectively, of plaintiffs, a skilled workman, employed by defendant and under his direction, was upon the steel frame at work, and while in the exercise of due care, fell from the place where he was at work, a distance of about 28 feet, and was killed, as the proximate result of the failure of the defendant to have the beams, joists or girders below the floor level where deceased was at work, covered with plank laid close together, as required by the statute in question.

It is conceded by counsel for appellant that the pleading, fairly interpreted, discloses that the deceased was cognizant of all the facts, surroundings and circumstances, particularly the fact that there was no decking or flooring on the joists, beams or girders below the floor level where he was working at the time of the fall. The court sustained a demurrer urged by the defendant to the petition and, plaintiffs declining to amend, their suit was dismissed; from which the minor, Howard Cody Ross, acting by and through the guardian of his estate, alone perfected an appeal.

The pertinent provisions of the statute under review, enacted for the protection of workmen on buildings, read: "1. To prevent workmen from falling.—Any building three or more stories in height, in the course of construction or repairs, shall have the joists, beams or girders of each and every floor below the floor level where any work is being done, or about to be done, covered with planking laid close together * * * to protect the workmen engaged in the erection or construction of such buildings from falling through joists, girders, and from falling planks, bricks, rivets, tools or other substances, whereby life and limb are endangered. * * * Such flooring shall not be removed until the same is replaced by a permanent flooring in such building." It is made the duty of the general contractor in charge of the erection and construction of such buildings to provide the flooring as mentioned; the act concludes with a penal provision, reading: "Failure upon the part of the * * * general contractor * * * to comply with the provisions of this Act shall be deemed a misdemeanor, and upon conviction thereof shall be fined in any sum not less than fifty dollars nor more than two hundred dollars, and each day of such violation shall constitute a separate offence." Acts 1919, c. 152, § 7.

As illustrative of the importance of the safety measure in question, and the establishment by the Legislature of a sound public policy with reference thereto, the caption of the act reads: "An Act to protect those engaged in the erection or construction of buildings three or more stories in height, from falling through joists, and from falling planks, bricks, rivets or any other substance whereby life and limb is endangered, * * * prescribing a penalty, * * * and declaring an emergency." And the emergency clause recited that: "The fact that there is now no law on the Statute Books of this State providing for the protection of laborers working on buildings three stories in height while in the course of construction or being repaired, and that laborers thus engaged are in danger of being injured or killed creates an emergency and an imperative public necessity, * * *."

The constitutional provision, the basis of appellants' cause of action, is Sec. 26 of Art. 16, reading: "Every person, corporation, or company, that may commit a homicide, through wilful act, or omission, or gross neglect, shall be responsible, in exemplary damages, to the surviving husband, widow, heirs of his or her body, or such of them as there may be, without regard to any criminal proceeding that may or may not be had in relation to the homicide."

The above statement embodies the material facts alleged and the applicable provisions of statutory and constitutional law.

It is contended that the action of the court in dismissing appellants' suit was correct, in that, as a matter of law, the deceased, by continuing to work with knowledge that decking or flooring had not been laid on the joists, beams or girders below where he was engaged, assumed the risk involved, and, further, was guilty of contributory negligence, hence appellants were not entitled to recover, although the omission of the defendant to have the flooring and decking laid may have been willful or gross negligence.

■ The Legislature deemed the safety of workmen, engaged as was the deceased at the time of his death, of such paramount importance as to enact that, a contractor guilty of violating the provisions of the safety measure should, in addition to other liability, be held criminally liable. The defendant cannot plead ignorance of the statute, and his deliberate violation of same must be presumed from his failure to comply with its provisions; and we think that his dereliction in this respect must be regarded as willful and without due regard for human life and safety. The death of the workman having resulted from defendant's persistent omission to lay the floor below the level where deceased was engaged, which, if done, would have protected him from falling to his death through the joists and girders, to say the least, proximately resulted from the defendant's gross negligence in the premises.

Commenting upon a similar situation that arose under a kindred statute of the State of Wisconsin, the Supreme Court of that state, in Pinoza v. Northern Chair Co., 152 Wis. 473, 140 N.W. 84, 86, said: "If a person purposely does an act in violation of a duty created by law as regards the personal safety of others, and the policy of the written law is that the prevention of such violations is so important that a person guilty thereof should in addition to civil liability to the injured person be held criminally liable as for a serious offense against the public, the act should be regarded as done regardless of human life or bodily injury and in case of damage happening to those whose safety the law was designed to conserve, he may successfully maintain an action against the guilty party to recover for his loss regardless of contributory negligence on his part; thus classing the act of the wrong-doer with ordinary acts of gross negligence." So we conclude that the death of Chester Howard Ross, the workman, was a homicide due to the defendant's willful act, omission, or gross negligence, within the meaning of Sec. 26 of Art. 16 of the Constitution.

■ We do not think the question of contributory negligence is in the case. No reason is given as to why the deceased fell; it is not alleged that any act or omission on the part of the defendant caused the fall; the gravamen of the complaint is, that defendant's violation of the statute in failing to have the decking or flooring laid, left deceased without protection from falling through the joists and girders to his death. The statute devolved no duty upon the workman to see to it that the joists and girders were floored, and in this respect, he was unable to protect himself, but, perforce of circumstances, had to accept the situation, or else cease work and deprive himself of sustenance for his family. So, in the situation presented, we

see no room for the presence in the case of contributory negligence.

Whether or not, under the circumstances presented, assumption of risk is an available defense, the authorities are conflicting, although the weight is against that idea, as stated in 39 C.J., § 904, pp. 701–703: "In most jurisdictions, it has been held that, where statutes require employers to take designated precautions for the protection and safety of their employees, a noncompliance therewith operates to deprive them of the defense of assumption ·of risk, although the statutes contain no express provision to that effect. The rule applies whether the statute takes the form of a command to furnish safe appliances or is an express prohibition against furnishing unsafe or improper appliances; and its operation is not affected by the fact that the noncompliance with the statute by the master and the dangers resulting therefrom were obvious, or that the servant had actual knowledge that the master had not complied with the statute and continued to work with knowledge of such violation, and an appreciation of the dangers. If the rule was otherwise, the statutes would be of no effect whatever. Also it has been held that the rule applies, although the servant continued to work in violation of rules promulgated by the employer in evasion of the statute, or voluntarily adopted an unsafe way of work where a safe way existed." And to the same effect, see 35 Am.Jur., Sec. 304, p. 731, as follows: "The general trend of authority is opposed to the view that assumption of risk is available as a defense to an action by an employee based upon breach of statutory duty. According to the decided weight and trend of modern authority, an employee does not assume the risk of injury from the employer's noncompliance with specific statutory duties imposed for the benefit and protection of employees, with the result that an employer who has violated a statutory duty owing to an employee cannot set up the defense of assumption of risk against a claim of the employee for injuries proximately caused by such violation of statute."

One of the best reasoned opinions supporting the majority rule, to which our attention has been called, was by the Supreme Court of Tennessee, in American Zinc Co. v. Graham, 132 Tenn. 586, 179 S.W. 138, 139; the court said: "The second inquiry is whether the miner assumed the risk of the situation, knowing, as he did, that the plaintiff in error had failed to comply with the statute. To hold that he did assume the risk would be equivalent to a repeal of the statute, since it would be a continuing invitation to the company to forbear compliance with its provisions. The statute was passed under the police power of the state for the purpose of protecting those who are unable to protect themselves, occupying as they necessarily do a position much inferior in financial security to that of their employers; the physical necessity of themselves and their families making it essential that they should have work in order to secure the means of sustenance. It would defeat this beneficent purpose if it should be admitted as a sound principle that a failure of the employer to obey the statute could be condoned by the employé. Such a conclusion would place the employer in the position of power which only the Legislature should occupy, since it would enable him to either destroy or maintain the policies of the state according to his own will and purpose. Moreover, it would be inconsistent to admit a mutual regulation by employer and employé of a matter which had been deemed of sufficient importance to require an act of the Legislature to express a specific state policy. Such acts being passed to define rights and duties for the better regulation of business, and hence indirectly for the better regulation of society, must be sustained. They are not amenable to the doctrine of assumption of risk for the reasons we have stated, since a contrary decision would result in the courts loosing that which the Legislature has bound. Nor is the result changed by the fact that the statute fixes a penalty for its violation. The doctrine that the assumption of the risk does not apply is in harmony with the purpose of the penalty, and there is nothing in the act to indicate that the penalty was exclusive of the employé's right to maintain an action for damages." (Citing numerous authorities).

To the same effect, see McCarty v. Nelson, 129 Ark. 280, 195 S.W. 689; Jellico Coal Co. v. Adkins, 197 Ky. 684, 247 S. W. 972; State ex rel. Adair Coal Co. v. Arnold et al., Mo.Sup., 254 S.W. 850.

Believing the majority rule to be based on sounder reasoning and a more generous consideration of human interest than the minority rule, we will follow the same, therefore reverse the judgment of the court below and remand the cause for trial.